FRANK DELANO VIPPERMAN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 8301

March 31, 1976                    547 P.2d 682

*Jeffrey D. Sobel,* Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *George Holt,* District Attorney, and *H. Leon Simon* and *Rimantas A. Rukstele,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

*Per Curiam:*

A jury found the appellant, Frank Delano Vipperman, guilty of murder in the second degree. He was sentenced to life imprisonment in the state penitentiary. He has appealed from his judgment of conviction, asserting several assignments of error. We need consider only one, for it requires a reversal and a remand for a new trial.

On April 20, 1973, David McPeake, an employee of an auto body shop in Las Vegas, heard a shotgun blast, followed by screams, from his employer, Bill Parquette, "Help me, Dave, help me. Frank shot me." McPeake testified that he saw Vipperman standing in the corner of the shop and

watched him as he raised the gun and fired a second and fatal shot into Parquette.

At trial, the State proved that Vipperman purchased a 20-gauge shotgun on the day of the killing and that a 20-gauge shotgun shell was recovered from the scene of the crime.

Vipperman testified at trial in his own behalf, claiming that he was with a girl named Sue on the night of the killing and that while he was with her his shotgun was stolen from his car.

The defense presented a witness who testified that a Jack Heath had admitted to him that Heath, a girl named Carol, and an employee from the body shop had killed Parquette and framed Vipperman.

Vipperman, who was subsequently arrested and given a full Miranda[1] warning, remained silent at the time of his arrest, and he made no mention of his alibi testimony later presented at trial. On cross-examination, he was asked repeatedly by the district attorney why he had failed to reveal his alibi to the police. The questions are footnoted below.[2] Vipperman

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

[2]"Q. [by Deputy District Attorney Earl Gripentrog]. Why didn't you tell the police that you were with a girl named Sue at the Horseshoe?

"MR. SOBEL [Appellant Vipperman's attorney]: I object to that, Your Honor, on the basis that at no point does a man have the duty to have any excuse with the police, as Mr. Gripentrog knows.
"...
"THE COURT: The objection is overruled.
"...
"Q. My question is the police arrested you for murder and you just left a girl named Sue at the hotel and the police had just arrested you for murder, and you never told the police?

"A. I don't recall the police ever telling me what I was arrested for. The following day I was told by an attorney and I never spoke to a policeman again.
"...
"Q. Then when you found out what you were being arrested for and your attorney told you, why didn't you have your attorney go to the police and tell them that you were with a girl named Sue?

"A. My attorney told me to remain silent, which I did.
"...
"Q. But at no time did you indicate that to law enforcement?

"MR. SOBEL: I would like the record to reflect a continuing objection to this line of questioning regarding a failure to speak to the police, Your Honor; it violates the defendant's rights under Miranda.

"THE COURT: The objection is overruled.

"MR. GRIPENTROG:

claims that the prosecutorial questioning constituted reversible error in view of the recent opinion of the High Court in United States v. Hale, 422 U.S. 171 (1975). We agree. The defendant in Hale was arrested after a victim of a robbery identified the defendant as one of the robbers. He was advised of his right to remain silent, and was searched. When an officer asked the defendant to explain how he had obtained the money found in his possession, the defendant made no response. At his trial, the defendant testified in his own defense and explained his possession of the money. In an effort to impeach this explanation, the prosecutor caused the defendant to admit on cross-examination that he had not offered the exculpatory information to the police at the time of the arrest. The Supreme Court reversed Hale's conviction on the grounds that Hale's silence failed to qualify as a prior inconsistent statement (permitting prosecutorial comment) and because Hale's silence carried with it an intolerably prejudicial impact. In reaching this conclusion, however, the majority of the High Court avoided constitutionalizing its ruling, by holding, 422 U.S. at 181:

"Accordingly, we hold that under the circumstances of this case it was prejudicial error for the trial court to permit cross-examination of respondent concerning his silence during police interrogation, and we conclude, in the exercise of our supervisory authority over the lower federal courts, that Hale is entitled to a new trial."[3]

The Nevada case law states that "[M]ere passing reference to such silence . . . does not mandate automatic reversal. The consequences should be governed by a consideration of the trial as a whole." Shepp v. State, 87 Nev. 179, 181, 484

---

"Q. Then the one girl that could absolutely clear you and tell of your whereabouts, you did not inform the police at all, did you?
"A. No, sir, I did not.
"Q. Did you tell them that you were with this girl?
"A. I did not tell the police anything.
". . .
"Q. Well, why didn't you tell the police what you knew that evening?
"A. The police did not tell me what I was arrested for. I didn't know until the following day what I was arrested for, and then I was told by an attorney not to speak of anything."

[3]Justices Douglas and White concurred in Justice Marshall's majority opinion of reversal, on the grounds that the case was controlled by Miranda v. Arizona, *supra,* and that due process was violated when the prosecution called attention to the silence of the defendant at the time of his arrest.

P.2d 563, 564 (1971). See also Edwards v. State, 90 Nev. 255, 524 P.2d 328 (1974).

In the instant case, there was more than "mere passing reference" to Vipperman's post-arrest silence. No less than six times did the prosecution press Vipperman to explain his post-arrest silence (see f. 2, *supra*), knowing full well that under the Miranda rule he had been told by the police officers that he had every right to remain silent. We believe that due process prohibits any inference to be drawn from the exercise of one's constitutional right to remain silent after arrest. To hold otherwise would not only burden the exercise of the privilege to an intolerable degree, but would also operate unfairly against the accused, who, when informed of his rights, would not suppose that his silence could in any way be used against him. Cf. Johnson v. United States, 318 U.S. 189, 196–199 (1943). Accordingly, we reverse and remand the case for a new trial.