HENNY BERNIER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 11010

August 14, 1980                                    614 P.2d 1079

*Morgan D. Harris,* Public Defender, and *Terrence M. Jackson,* Deputy Public Defender, Clark County, for Appellant.

*Richard Bryan,* Attorney General, Carson City, and *Robert J. Miller,* District Attorney, and *Gary Weinberger,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

Relying primarily upon our decision in Vipperman v. State, 92 Nev. 213, 547 P.2d 682 (1976), and the United States

Supreme Court case of Doyle v. Ohio, 426 U.S. 610 (1976), the appellant requests that we set aside her conviction for extortion and possession of stolen property since the prosecutor impermissibly used her post-arrest silence to impeach her trial testimony. Moreover, the prosecutor commented upon her failure to testify at preliminary examination. This is asserted as an additional reason for voiding her conviction. In our view the assigned errors have merit and compel us to reverse and remand for another trial.

A small wooden plaque bearing an American flag and a picture of the Apollo XIV space capsule disappeared from the home of Clem Bernier. The plaque, valued at between $25,000 and $40,000, was a gift from Stuart Roosa, an astronaut on the Apollo XIV moon mission. It was the State's theory that Henny Bernier, the former wife of Clem, and Mike Uzelac acquired the plaque, knowing it to be stolen, with the intent of extorting $2,500 from Clem Bernier by telling him that the thief had threatened to destroy the flag unless he paid the money. An arrangement was made to exchange the plaque for $2,500. Mike Uzelac drove Henny Bernier to the Hacienda Hotel where the exchange occurred. Clem Bernier previously had notified the police of the contemplated exchange, and when it happened Henny Bernier was arrested. Uzelac, waiting outside, also was arrested. When arrested, Henny was given the Miranda warnings.

At trial, Henny testified that a young man named Vic had approached her regarding the flag and that she had to act as a go-between. This was the first mention of Vic. She did not mention Vic to the police or to the district attorney, nor did she attempt to utilize police services in an effort to locate Vic. During cross-examination she was questioned about her failure to disclose Vic, or to utilize police services to locate him. She responded by stating that she had not disclosed his name, nor had she utilized police services to locate him. When asked whether she had testified at the preliminary examination she answered "no."

During summation the prosecutor argued that an innocent person would not have waited two years to tell her story and would have gone to the police for help in locating Vic.

1. The Miranda warnings inform a person of his right to remain silent and implicitly assures him that his decision to remain silent cannot be used against him. Because of this, the Supreme Court in Doyle v. Ohio, 426 U.S. 610 (1976), found that impeachment by silence violated the constitution stating,

> 'it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the

time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.' Id. at 619.

Post-arrest silence following the giving of Miranda warnings may have been induced by governmental action. It would be fundamentally unfair to allow the government inducing such silence to later use such silence as impeachment at trial. Cf. Jenkins v. Anderson, 447 U.S. 231, (1980), where the court ruled that impeachment by use of prearrest silence does not violate the fourteenth amendment, since no governmental action induced the defendant to remain silent before arrest.

In Vipperman v. State, 92 Nev. 213, 547 P.2d 682 (1976), we ruled that the repeated questioning of the defendant with regard to his failure to reveal his alibi to the police was reversible error, noting that due process prohibits any inference to be drawn from the exercise of one's constitutional right to remain silent after arrest. There, as here, the accused when arrested was given the warnings required by Miranda. Also, in the case at hand, as in Vipperman the prosecutor made more than a "mere passing reference" to the accused's post-arrest silence. Not only did he impermissibly cross-examine upon that subject, he also forcefully argued such silence during jury summation. Here, as in Vipperman we must condemn such conduct, set aside the conviction and remand for another trial.

[Headnote 2]

2. Another error occurred in this case. The prosecutor made several comments about the failure of Henny to testify at preliminary hearing. This was error. State v. Anderson, 517 P.2d 508 (Ariz. 1973). Defense testimony seldom is offered at the preliminary hearing. There normally is no reason to divulge the defendant's case at that stage of the proceeding. In this case Henny was advised by her attorney not to testify. It is evident that there is no legitimate basis upon which to draw an inference adverse to the defendant from the failure to testify at the preliminary hearing, and a prosecutor should not attempt to do so.

Reversed and remanded for a new trial.

MOWBRAY, C. J., and GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.