968 P.2d 292 (1998)
James MEEGAN, Appellant,
v.
The STATE of Nevada, Respondent.
James Francis MEEGAN, Appellant,
v.
The STATE of Nevada, Respondent.
Nos. 29511, 29739.
Supreme Court of Nevada.
November 25, 1998.
As Corrected on Denial of Rehearing February 16, 1999.
*293 David M. Shieck, Las Vegas, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Stewart L. Bell, District Attorney, and Christopher Laurent, Chief Deputy District Attorney, and Vickie J. Monroe, Deputy District Attorney, Clark County, for Respondent.

OPINION
SHEARING, J.:
This is an appeal from a conviction of first-degree murder pursuant to a jury verdict which resulted in a sentence of life imprisonment without the possibility of parole for Appellant James Francis Meegan and an appeal from the district court's order denying appellant's motion for a new trial. This court consolidated the two appeals. NRAP 3(b).
Meegan's ten-month-old daughter, Francine, died. After she died, Meegan and his wife took Francine's body to the Arizona desert where Meegan burned the body and then abandoned it. In summarizing a videotaped interview admitted into evidence and played to jury at trial, Meegan's counsel stated during closing argument that the videotape "indicates that James Meegan is sleeping. He wakes up, and he sees Francine *294 in some pills." In addition, Meegan's wife, Lillian, testified that Francine got into Meegan's prescription pills, but that she did not know if Francine swallowed any. The doctors who conducted the autopsy testified that their findings were inconsistent with death from a drug overdose. Instead, their findings were consistent with death due to shaken-baby syndrome.
Meegan argues that the district court erred when it granted the State's pretrial motion for a continuance, thereby violating NRS 178 .556 and Meegan's Sixth Amendment right to a speedy trial. On May 7, 1996, Meegan invoked his right to trial within sixty days. The trial was scheduled for July 8, 1996. On June 25, 1996, the district court granted the State's motion to continue the trial date on the basis that critical DNA analysis was not yet complete. The district court rescheduled the trial for August 5, 1996.
The United States Supreme Court has held that "simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from `presumptively prejudicial' delay." Doggett v. United States, 505 U.S. 647, 651-52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The Supreme Court has held that post-accusation delay becomes "presumptively prejudicial" as it approaches one year. Id.
Here, the delay from July 8th to August 5th constituted less than thirty days. We conclude that this delay did not cross the threshold dividing ordinary from "presumptively prejudicial delay." Thus, the district court's decision to grant the State's motion to continue did not violate Meegan's Sixth Amendment rights.
NRS 178.556(1) states in relevant part: "If a defendant whose trial has not been postponed upon his application is not brought to trial within 60 days after the arraignment on the indictment or information, the district court may dismiss the indictment or information." Determining whether to dismiss a case which has exceeded the sixty-day time period falls within the sound discretion of the trial court. Berry v. Sheriff, 93 Nev. 557, 558, 571 P.2d 109, 110 (1977). Here, the delay exceeded the sixty-day rule by one month, and the State established that the purpose was to obtain DNA test results that were crucial to its case. NRS 178.556 provides that the district court may dismiss a complaint if the defendant is not brought to trial within sixty days of his arraignment. A dismissal is mandatory only if the State cannot show good cause for the delay. Anderson v. State, 86 Nev. 829, 834, 477 P.2d 595, 598 (1970). Here we conclude that the district court did not abuse its discretion in determining that the State had established good cause for the delay.
On May 16, 1996, the district court allowed the State to endorse additional witnesses which resulted in a potential conflict of interest for Meegan's counsel. At that time, Meegan asserted his right to self-representation. The district court asked Meegan a series of questions designed to determine whether he knew anything about the law and procedure governing his case. Upon receiving answers which indicated that he knew virtually nothing about either, the district court denied his request. The basis for the denial was that Meegan was incapable of representing himself in a complex case which included over thirty witnesses, and involved expert testimony on topics such as DNA evidence and other medical topics. The district court determined that the trial would be disrupted if Meegan were allowed to represent himself. This court has held that "[a]lthough the constitutional right of self-representation is generally protected by the courts, courts sometimes permit self-representation to be denied where ... the case is especially complex, requiring the assistance of counsel ...." Lyons v. State, 106 Nev. 438, 443-44, 796 P.2d 210, 214 (1990); see also Ashcraft v. Florida, 465 So.2d 1374 (Fla. Dist.Ct.App.1985). Thus, we hold that based on the complexity of the case, the district court properly denied Meegan's request to represent himself.
Furthermore, approximately one month later on June 25, 1996, Meegan appeared to reject his earlier request to represent himself. In reference to his lawyers, he stated:
In my opinion I thought I had the choice of effective counsel. These two gentlemen have been doing a great job. They've been with me since the case began, and I think by taking them away from me is going to hurt my case, and I'd like for them to stay on my case with me.
*295 Evidently, any wish Meegan may have had to represent himself was abandoned.
Also, Meegan argues that the district court erroneously admitted two photographs of Francine. It is within the court's discretion to admit photographs unless the probative value is substantially outweighed by any unfair prejudicial effect the photographs might have on the jury. Browne v. State, 113 Nev. 305, 313, 933 P.2d 187, 192 (1997). The record reflects that the district court carefully considered the probative value and prejudicial effect of these photographs and found that they possessed significant probative value but no prejudicial effect. We conclude that the district court did not abuse its discretion in admitting the photographs. See NRS 48.035(1).
Meegan argues that his wife, Lillian Meegan, was an accomplice whose testimony was not sufficiently corroborated by other evidence and, therefore, this court must reverse Meegan's conviction pursuant to NRS 175.291(1). According to NRS 175.291(2), an accomplice is "one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." In denying Meegan's motion to exclude Lillian's testimony as an accomplice, the district court concluded that no evidence supported Meegan's argument that Lillian was an accomplice. We conclude that the record supports the district court's conclusion. Therefore, under NRS 175.291(1), the district court was correct in both allowing Lillian's testimony and refusing to grant the accomplice instruction submitted by Meegan.
Meegan argues that the district court erred in denying his motion for a mistrial. Meegan moved for a mistrial based on the testimony of a friend of Meegan's daughter. The friend testified that Meegan's daughter told her that her father (Meegan) had killed her brother. Further examination immediately indicated that the friend could have meant her sister Francine, the victim in this case. After listening to arguments the district court stated that the jury would be admonished that "despite the last witness's testimony there is no evidence whatsoever that there has ever been any missing brother in this family." Meegan also based his motion for a mistrial on the friend's testimony that Meegan's daughter had told her that she had been "kicked out" of the house. It does not appear that either of the remarks was "clearly and enduringly prejudicial" so as to mandate a mistrial. Geiger v. State, 112 Nev. 938, 942, 920 P.2d 993, 996 (1996). It is within the sound discretion of the trial court to determine whether a mistrial is warranted. Id. Absent a clear showing of abuse of discretion, the trial court's determination will not be disturbed on appeal. Id.
Meegan argues that the State failed to prove that the cause of death was a criminal agency, as is required to prove the corpus delicti. To establish the corpus delicti of the crime of murder, the State must establish the fact of death, and that death resulted from the criminal agency of another and not from natural causes, accident, or suicide. Hicks v. Sheriff, 86 Nev. 67, 70, 464 P.2d 462, 464 (1970). We conclude that the evidence presented at trial, viewed in a light most favorable to the prosecution, is sufficient for a reasonable jury to conclude beyond a reasonable doubt that Francine's death was caused by criminal agency.
During closing arguments, the prosecutor played portions of a previously admitted videotaped interview with Meegan while he was in jail. Before showing the first portion of the tape, the prosecutor stated: "Let's ask Mr. Meegan who's responsible for Francine's death?" The prosecutor alternatively played the tape and repeated a similar query five times. Meegan moved for a mistrial, which was denied, contending that the prosecutor's statement was a comment on Meegan's Fifth Amendment right not to testify. Meegan maintains that the prosecutor's argument was a challenge to Meegan because he did not testify and tell the jury what had happened to Francine. It appears that the repetition of the query was based on the defense attorney's own query in his opening statement and the questions on the tape of Meegan's custodial interview. The district court, which heard the prosecutor's argument in the context of the viewing of the tape, found that there was no prosecutorial *296 misconduct. After a review of the record, we conclude that the district court did not err.
At the sentencing hearing, the district court recited certain general parole information and statistics. Meegan maintains that the district court improperly relied on this information in determining his sentence. The record reveals, however, that the district court merely discussed the current state of post-sentencing developments in Nevada. The district court did not imply that it based its sentencing decision on this information. Rather, the court appeared to present this information to Meegan in order to discuss his post-sentencing options with him. Therefore, we conclude that Meegan's argument lacks merit.
Finally, Meegan argues that, taken together, the numerous errors which occurred at trial denied him a fair trial. We conclude that all of Meegan's arguments on appeal lack merit.
Accordingly, we affirm the judgment of conviction and the district court's order denying Meegan's motion for a new trial.
ROSE, YOUNG, and MAUPIN, JJ., concur.
SPRINGER, C.J., concurring in part and dissenting in part:
I concur with the judgment of conviction but dissent to the penalty judgment.
This is another tragic baby-shaking death. After Meegan realized what he did, he tried to cover up the homicide by claiming that the baby had died from an overdose of medication. He also tried to conceal the baby's remains by burning and burying them in the desert. Horrifying as this killing is, it is not a torture or mutilation murder. An angry shaking of a child is not torture and, in my opinion, the attempts to dispose of the child's body do not constitute mutilation because the intent was to avoid detection, not to disfigure the child's body.
Giving the jury an instruction on torture and mutilation was not justified by the facts of this case and was error. This case should not have been tried as a capital case. This case goes beyond our ruling in Phenix v. State, 114 Nev. 116, 954 P.2d 739 (1998), and it is highly probable that Meegan would not have been sentenced to the extreme penalty of life without the possibility of parole had it not been for the State's having overcharged him in the manner discussed in my dissent in Schoels v. State, 114 Nev. 109, 966 P.2d 735 (1998). Because Meegan was sentenced in an unfair manner and for the reasons stated in my dissent in Schoels, I dissent.