An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

JOHN ELVIN TURNER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62461

**FILED**

OCT 29 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of robbery. Eighth Judicial District Court, Clark County; Valerie Adair, Judge. Appellant raises eleven issues on appeal.

First, appellant contends that the evidence presented at trial was insufficient to support the jury's finding of guilt. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Origel-Candido v. State,* 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

The evidence shows that while the victim stood near a bus station, appellant asked to use the victim's cell phone. The victim answered that his cell phone was not working. After which, appellant asked the victim for $1. The victim told appellant that he did not have a $1. Moments later, appellant struck the victim twice in the face with his closed fist. The victim fell to the ground and his cell phone landed on the ground a few feet from him. Appellant picked up the cell phone and grabbed the victim's work bag, emptied it, and perused through the contents. Appellant walked away with the victim's cell phone but took

SUPREME COURT
OF
NEVADA

(O) 1947A

14-35995

nothing from the bag. He was apprehended a few blocks away based on the victim's description of the suspect. The victim's cell phone was found in appellant's short's pocket. After the victim identified appellant as the perpetrator in a show-up identification, appellant was arrested and ultimately convicted of robbery.

The jury could reasonably infer from the evidence presented that appellant was guilty of robbery. *See* NRS 200.380. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Second, appellant argues that he was denied his statutory speedy trial right and that the district court made an inadequate record showing good cause for the delay in proceeding to trial. NRS 178.556 provides that a district court may dismiss a charging document if the defendant is not brought to trial within 60 days after arraignment. "A dismissal is mandatory only if the State cannot show good cause for the delay." *Meegan v. State*, 114 Nev. 1150, 1154, 968 P.2d 292, 294 (1998), *abrogated on other grounds by Vanisi v. State*, 117 Nev. 330, 22 P.3d 1164 (2001).

Here, appellant invoked his statutory right to a speedy trial at arraignment and the district court set trial five days outside the 60-day limit due to courtroom accommodation. Five days before trial was scheduled to commence, defense counsel requested a competency evaluation for appellant. On return from competency court, the district court set the trial for the next available court date 48 days later, on

August 20, 2012. On August 16, 2012, defense counsel requested a 4-week continuance to investigate appellant's past medical treatment. The district court set trial for October 15, 2012, to which counsel agreed. The trial date was again continued to October 18, 2012, due to defense counsel's filing of a motion to suppress evidence. Based on this record, we conclude that appellant's statutory speedy trial right was not violated where the delay was aptly attributable to district court convenience, *see Shelton v. Lamb*, 85 Nev. 618, 619, 460 P.2d 156, 157 (1969) (recognizing "the well-settled law of this state that the condition of the calendar, the pendency of other cases, the public expense, the health of the judge, and even the convenience of the court are good causes for a continuance"), and appellant's pursuit of a competency evaluation and evidentiary challenge.

Third, appellant contends that the district court erred by denying his challenge for cause against a juror who expressed that he would "have an issue" if the defense "didn't do anything." The district court denied the for-cause challenge based on subsequent questioning of the juror, and appellant exercised a peremptory challenge to remove the juror. Even if the district court erred, appellant has not alleged or demonstrated that any jurors actually empanelled were unfair or not impartial.[1] *See Weber v. State*, 121 Nev. 554, 581, 119 P.3d 107, 125, (2005) ("Any claim of constitutional significance must focus on the jurors who were actually seated, not on excused jurors."). Therefore, no relief is warranted on this claim.

---

[1]Appellant concedes that he did not allege below that any juror actually empanelled was not impartial.

SUPREME COURT
OF
NEVADA

(O) 1947A

3

Fourth, appellant argues that the district court erred by denying his motion to suppress evidence obtained through an unlawful search of his person. We review the district court's decision as a mixed question of law and fact. *Hernandez v. State*, 124 Nev. 639, 646, 188 P.3d 1126, 1131 (2008). The district court's factual findings are reviewed for clear error, but the legal consequences of those factual findings are reviewed de novo. *Somee v. State*, 124 Nev. 434, 441, 187 P.3d 152, 157-58 (2008). In particular, he contends that his detention by the police was not based on reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968), because he did not match the description of the suspect the victim gave to the 911 operator. The victim described his attacker as a black male, 61 inches tall, 140 pounds, approximately 18 years old, and wearing a gray sweatshirt. Appellant was described at trial as a black male, 66 inches tall, 190 to 250 pounds, and "doesn't look like a teenager." When he was detained, appellant was wearing a gray sweatshirt and was found about three to four blocks away from the scene of the robbery shortly after it occurred, and was walking in the direction of travel described by the victim. In ruling on the motion, the district court acknowledged that there were "significant differences" between appellant and the suspect's description in terms of weight and height but that the general description of a black male wearing a gray sweatshirt in the vicinity of the robbery was sufficiently "specific and narrow" to support an investigative stop.

"In determining the reasonableness of a stop, the evidence is viewed under the totality of the circumstances and in the context of the law enforcement officer's training and experience." *State v. Rincon*, 122 Nev. 1170, 1173-74, 147 P.3d 233, 235 (2006). Although "[r]easonable suspicion is not a stringent standard," it requires "more than a police

officer's hunch." *Id.* at 1173, 147 P.3d at 235. "A law enforcement officer has a reasonable suspicion justifying an investigative stop if there are specific, articulable facts supporting an inference of criminal activity." *Id.*; *see United States v. Arvizu,* 534 U.S. 266, 273 (2002) (concluding that while officers must have a particularized basis to detain an individual, they must be allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person" (internal quotation marks omitted)); *United States v. Cortez,* 449 U.S. 411, 417–18 (1981) (observing that reasonable suspicion is an "elusive concept," but it demands that the totality of the circumstances show that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity"); NRS 171.123(1); *Proferes v. State,* 116 Nev. 1136, 1139, 13 P.3d 955, 957 (2000) (concluding that "[a] police officer may stop and detain a suspect for questioning regarding possible criminal behavior," but that "[t]here must be some objective information to support a reasonable suspicion connecting the person to criminal activity"), *overruled on other grounds by Rosky v. State,* 121 Nev. 184, 111 P.3d 690 (2005). While the victim's physical description of the suspect differs from appellant's appearance in some aspects, appellant matched the victim's description in terms of race, gender, clothing, and direction of travel. And appellant was found in the vicinity of the robbery, minutes after it occurred. Considering the totality of the circumstances, we cannot say that the district court erred by denying appellant's motion to suppress.

Appellant also argues that the cell phone recovered from his pocket should have been suppressed because he did not consent to a

search of his pocket and the police did not have a warrant to search the cell phone. Because appellant did not object to the admission of the cell phone based on these grounds, we review his claim for plain error. *See Herman v. State*, 122 Nev. 199, 204, 128 P.3d 469, 472 (2006), *abrogated on other grounds by Nunnery v. State*, 127 Nev. __, 263 P.3d 235 (2011); *Nelson v. State*, 123 Nev. 534, 543, 170 P.3d 517, 524 (2007) ("'To be plain, an error must be so unmistakable that it is apparent from a casual inspection of the record'" and the defendant must show that the error affected his substantial rights. (quoting *Garner v. State*, 116 Nev. 770, 783, 6 P.3d 1013, 1022 (2000), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56 P.3d 868 (2002))). After Officer Gary Sittre detained and handcuffed appellant, he noticed a cell phone in appellant's shorts' pocket. He asked appellant if he could search appellant's pockets and appellant responded affirmatively. Because appellant did not challenge this matter below and therefore no factual findings were made, we cannot say from this limited record that the mere fact that appellant was handcuffed rendered his consent involuntary. *See United States v. Watson*, 423 U.S. 411, 424, (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."); *Sparkman v. State*, 95 Nev. 76, 79-80, 590 P.3d 151, 154 (1979) (concluding that "the consent to search must be voluntarily given, and not the product of deceit or coercion, express or implied" but that "[t]he mere fact that the consent was given while appellant was in custody does not render it involuntary"); *McIntosh v. State*, 86 Nev. 133, 136, 466 P.2d 656, 658 (1970) (concluding that the mere fact that a defendant consents to search while in police custody does not render the consent involuntary). As to appellant's claim that the police conducted a warrantless search of

the cell phone, we conclude that he has not shown plain error because he had no standing to claim the protection of the Fourth Amendment. *See Harper v. State*, 84 Nev. 233, 236, 440 P.2d 893, 895 (1968); *see also United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014) (concluding that defendant did not have standing to challenge the search of a passenger's cell phone because he had no reasonable expectation of privacy, as "[t]he Fourth amendment protects the people against unreasonable searches of 'their' effects").

Fifth, appellant contends that the district court erred by allowing the admission of the victim's unduly suggestive show-up identification of him. He concedes that he failed to preserve this matter for review and therefore his claim is reviewed for plain error affecting his substantial rights. *See* NRS 178.602; *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008).

Because the pretrial identification preceded formal charges, we consider the test set forth in *Stovall v. Denno*, which is whether, under the totality of the circumstances, "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." 388 U.S. 293, 301-02 (1967); *see Jones v. State*, 95 Nev. 613, 617, 600 P.2d 247, 250 (1979) (acknowledging that "[a]n on-the-scene confrontation between eyewitness and suspect is inherently suggestive because it is apparent that law enforcement officials believe they have caught the offender" but that countervailing policy concerns may justify the procedure); *State v. Delahunt*, 401 A.2d 1261, 1265-66 (R.I. 1979). "Short of that, it is for the jury to weigh the evidence and assess the credibility of the eyewitnesses." *Gehrke v. State*, 96 Nev. 581, 584, 613 P.2d 1028, 1029 (1980).

 

Appellant argues that the identification procedure was problematic because he did not match the victim's description of the suspect, Officer Michael Wagner told the victim that appellant was "the right man based on the initial 911 description given by the victim," and Wagner did not read any special instructions to the victim. While the victim's description of the suspect was not an exact match, his description was consistent with aspects of appellant's appearance, including appellant's race and clothing. Further, appellant overstates Officer Wagner's comments. Officer Wagner testified, "I just let [the victim] know that we were traveling to a location that somebody was stopped, a subject had been detained that matched the description. And I just wanted to know that if the subject that was detained was the person that robbed him or not?" Wagner also acknowledged that he did not suggest to the victim that appellant was the person who had robbed him. And appellant does not identify what instructions should have been given to the victim before the show-up. Although show-ups are inherently suggestive, we cannot say that the show-up was unnecessarily suggestive considering the totality of the circumstances, *see Banks v. State*, 94 Nev. 90, 94-96, 575 P.2d 592, 595-96 (1978); *Jones*, 95 Nev. at 617, 600 P.2d at 250.

Even if the show-up was unnecessarily suggestive, the question is whether the identification is nevertheless reliable. *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977); *Bias v. State*, 105 Nev. 869, 871, 784 P.2d 963, 964 (1989); *Banks*, 94 Nev. at 94, 575 P.2d at 595. In assessing the prejudicial effect from a suggestive procedure, we consider the following factors: (1) the witness' opportunity to view the suspect at the time of the offense, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description, (4) the witness' level of certainty at the

show-up, and (5) the time between the crime and the show-up. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *Gehrke*, 96 Nev. at 584, 613 P.2d at 1030. Here, the victim interacted with appellant for several minutes before the robbery, the victim's description of the robbery subject did not match appellant in some respects but was consistent with appellant's race, gender, clothing, and direction of travel, the victim immediately recognized appellant as the person who robbed him, and the show-up occurred shortly after the robbery. Considering all of these factors, we conclude that appellant has not shown that the victim's identification of him was unreliable, and consequently, he has not demonstrated that the district court plainly erred by admitting the show-up identification. *See Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995) (An error is plain if it "is so unmistakable that it reveals itself by casual inspection of the record." (internal quotation marks omitted)).

Sixth, appellant argues that witnesses improperly commented on his post-*Miranda* right to remain silent in violation of his due process and Fifth Amendment rights. Specifically, he complains about Officer Sittre's testimony that after he read appellant his *Miranda* rights, he "tried to ask [appellant] a question but it's like he didn't even pay attention to me" and Officer Wagner's testimony that he asked appellant if appellant spoke Spanish and "at this point [appellant] didn't want to answer any other questions or he became extremely uncooperative at this point." Because he did not object to this evidence, his claim is reviewed for plain error. *See* NRS 178.602; *Mclellan*, 124 Nev. at 267, 182 P.3d at 109.

"It is constitutionally impermissible to admit evidence of a defendant's invocation of his fifth amendment right to remain silent." *Aesoph v. State*, 102 Nev. 316, 321, 721 P.2d 379, 382 (1986). A "mere

 

passing reference" to post-*Miranda* silence "without more, does not mandate an automatic reversal." *Shepp v. State*, 87 Nev. 179, 181, 484 P.2d 563, 564 (1971), *overruled on other grounds by Stowe v. State*, 109 Nev. 743, 746, 857 P.2d 15, 17 (1993). We conclude that the testimony was only a passing reference to appellant's right to remain silent and was not elicited by the prosecution, *cf. Diomampo v. State*, 124 Nev. 414, 427-28, 185 P.3d 1031, 1040 (2008); *Vipperman v. State*, 92 Nev. 213, 216, 547 P.2d 682, 684 (1976). But even assuming error, appellant did not establish that it affected his substantial rights considering the substantial evidence pointing to his guilt.

Seventh, appellant argues that police officers' references to SCOPE in their testimony and a prior booking violated his due process rights because it suggested to the jury that he had engaged in prior criminal activity. Reference to a defendant's prior criminal history constitutes reversible error. *Witherow v. State*, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988). "The test for determining a reference to prior criminal history is whether the jury could reasonably infer from the evidence presented that the accused had engaged in prior criminal activity." *Id.* While we are not convinced that the jury could reasonably infer that appellant had a criminal history from the references to SCOPE, Officer Sittre's reference to a prior booking reasonably could imply prior criminal conduct. Nevertheless, we conclude that any error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Medina v. State*, 122 Nev. 346, 355, 143 P.3d 471, 477 (2006) (applying *Chapman*).

Eighth, appellant contends that the district court erred by refusing his request to instruct the jury that the prosecution's failure to

produce the victim's cell phone at trial created an irrebuttable presumption that the cell phone retrieved from appellant's person did not belong to the victim. In this, he argues that the instruction was warranted because the police had a duty to collect the cell phone as evidence. While "'police officers generally have no duty to collect all potential evidence from a crime scene,'" that rule is not absolute. *Daniels v. State*, 114 Nev. 261, 268, 956 P.2d 111, 115 (1998) (quoting *State v. Ware*, 881 P.2d 679, 684 (N.M. 1994)). We use a two-part test to determine whether the failure to collect evidence has resulted in an injustice. A defendant must first show that the evidence at issue was material, that is, "there is a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different" and second, if the evidence was material, that failure to collect it was due to mere negligence, gross negligence, or a bad faith attempt to prejudice the defendant's case. *Id.* at 267, 956 P.2d at 115. Gross negligence entitles the defense to a presumption that the evidence would have been unfavorable to the prosecution; bad faith may result in dismissal of the charges. *Id.* Here, the victim unequivocally identified the cell phone as belonging to him and Officer Sittre testified that stolen property that is claimed by a victim is generally not received into evidence, especially if the property is something like a cell phone. We conclude that appellant has not demonstrated that the cell phone was material or that the failure to collect it was due to gross negligence or bad faith and therefore the district court did not err by refusing appellant's instruction.

Ninth, appellant argues that the district court abused its discretion by refusing his proposed instruction that the jury must acquit

him if the circumstances of the identification and any other evidence raise reasonable doubt whether he was the person who committed the crime—appellant's theory of defense was misidentification. "[T]he defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be," but the district court may refuse such an instruction that misstates the law or is substantially covered by other instructions. *Vallery v. State*, 118 Nev. 357, 372, 46 P.3d 66, 76-77 (2002) (internal quotation marks omitted). Here, the jury was instructed that the prosecution bore the burden of proving beyond a reasonable doubt the offense and that appellant was the person who committed the offense. The jurors were further instructed that appellant was entitled to a not-guilty verdict if they had reasonable doubt as to his guilt. We conclude that the proffered instruction was substantially covered by other instructions and therefore the district court did not err in this regard.

Tenth, appellant contends that the prosecutor committed multiple instances of misconduct during voir dire and closing argument where the prosecutor asked the jurors to align themselves with the prosecution, indirectly suggested that appellant should have presented evidence, appealed to the jurors as Nevada citizens, asked the jurors to be fair to the victim, and misstated evidence. Because appellant did not object to any of the occurrences he identifies, we review his claims for plain error. *See* NRS 178.602; *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). We have carefully considered all of the challenged comments in the context in which they were made, *see Rose v. State*, 123 Nev. 194, 208, 163 P.3d 408, 418 (2007), and we conclude that appellant has failed demonstrate plain error.

 

Finally, appellant argues that cumulative error requires reversal of his conviction. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002). When assessing a cumulative-error claim, we consider "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000). Considering these factors, we conclude that any errors considered cumulatively were not of sufficient consequence to warrant reversal of appellant's conviction.

Having considered appellant's arguments and concluded that no relief is warranted, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Douglas

_____, J.
Cherry

HARDESTY, J., dissenting:

In my view, reversal of appellant's conviction based on cumulative error is not justified.

The majority first concludes that the district court erred by denying appellant's motion to suppress because his detention by the police was not based on reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968), considering the significant disparity between the victim's description of the assailant and appellant's physical appearance. I

SUPREME COURT
OF
NEVADA

(O) 1947A

disagree. The reasonableness of a stop is determined by the totality of the circumstances and in the context of the police officer's experience and training. *State v. Rincon*, 122 Nev. 1170, 1173-74, 147 P.3d 233, 235 (2006). Here, moments after the robbery, the police officer received information describing the perpetrator as a black male of a certain weight, height, and age, wearing a gray sweatshirt and traveling in a particular direction. When detained shortly after the robbery, appellant, a black male, was wearing a gray sweatshirt and was found about three to four blocks away from the scene of the robbery walking in the direction of travel described by the victim. While the victim's physical description of the assailant differs from appellant's appearance is some respects—most notably age and weight—appellant matched the description in terms of race, gender, clothing, and direction of travel.

At trial, the police officer testified that what stood out to him when he stopped appellant was appellant's gray sweatshirt, the fact that no one else in the area matched the suspect's description, and appellant was in close proximity to the robbery and traveling in the direction described by the victim. The police officer acknowledged that physical descriptors of a suspect are important but that descriptors such as weight, height, and age are dependent upon a person's perception. He explained that even where the physical description of a suspect may not match a victim's description in all respects, he nevertheless had a duty to investigate. The police officer's testimony shows that his decision to stop appellant was not based on a "hunch" but on "specific, articulable facts supporting an inference of criminal activity." *See id.* at 1173, 147 P.3d at 235; *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (concluding that while officers must have a particularized basis to detain an

 

individual, they must be allowed to "draw on their own experience and specialized training to make inferences from deductions about the cumulative information available to them that might well elude the untrained person" (internal quotation marks omitted)); *United States v. Cortez*, 449 U.S. 411, 417-18 (1981) (observing that reasonable suspicion is an "elusive concept," but it demands that the totality of the circumstances show that "the detaining [police] officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity"); NRS 171.123(1); *Proferes v. State*, 116 Nev. 1136, 1139, 13 P.3d 955, 957 (2000) (concluding that "[a] police officer may stop and detain a suspect for questioning regarding possible criminal behavior," but that "[t]here must be some objective information to support a reasonable suspicion connecting the person to criminal activity"), *overruled on other grounds by Rosky v. State*, 121 Nev. 184, 111 P.3d 690 (2005). Considering the totality of the circumstances, I conclude the investigative stop in this case did not offend the Constitution and the district court properly denied appellant's motion to suppress.

In addition to appellant's challenge to the investigative stop, the majority concludes that cumulative error justifies reversing appellant's conviction based on three claims of error. I must disagree. The first claim of error concerns appellant's contention that two police officers improperly commented on his post-*Miranda* right to remain silent. The challenged comments were nothing more than passing references to appellant's right to remain silent and they were not elicited by the prosecution. *See Shepp v. State*, 87 Nev. 179, 181, 484 P.2d 563, 564 (1971); *cf. Diomampo v. State*, 124 Nev. 414, 427-28, 185 P.3d 1031, 1040 (2008); *Vipperman v. State*, 92 Nev. 213, 216, 547 P.2d 682, 684 (1976).

The fleeting references made here are insufficient to support reversal based on cumulative error or any other ground for that matter. The second claim of error relied upon by the majority concerns challenges to three comments made by the prosecutor during voir dire and closing argument. Respecting the prosecutor's reference to defense counsel's hypothetical, the challenged comments merely reminded the jurors to use their common sense and to draw reasonable inferences from the evidence presented. That the jury inferred from those comments that appellant had a burden to present evidence, as he suggests, is speculative at best—particularly where the jury was instructed on the prosecution's burden to prove appellant's guilt beyond a reasonable doubt. The remaining two challenged comments, while improper, were not so significant that they produced cumulative prejudice.

When determining whether the cumulative error requires reversal of a conviction, we focus on three considerations: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000). While appellant was convicted of a serious crime, the issue of his guilt was not close and the quantity and character of the errors shown—witnesses' passing reference to appellant's post-*Miranda* right to remain silent and two improper arguments by the prosecutor—pale in comparison to the overwhelming evidence of guilt in this case. The evidence presented to the jury showed that the robbery victim identified appellant as the perpetrator in a show-up identification shortly after the robbery and the victim identified appellant at trial as the person who hit him in the face twice and absconded with his cell phone. And most incriminating, the victim's cell phone was found on appellant's person

SUPREME COURT
OF
NEVADA

(O) 1947A

when he was apprehended shortly after the robbery. The record simply does not support reversing appellant's conviction on the basis of cumulative error or for any other reason. Therefore, I would affirm the judgment of conviction.

_____, J.
Hardesty

cc: Hon. Valerie Adair, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A