# IN THE SUPREME COURT OF THE STATE OF NEVADA

RAMEL W. ORTIZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78996

FILED

MAR 19 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of burglary, first degree kidnapping, second degree kidnapping, six counts of sexual assault, robbery, assault, and three counts of open and gross lewdness. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge; Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Ortiz first contends the district court abused its discretion by failing to conduct an evidentiary hearing on his motion to strike the jury venire and erred in denying his motion because only 1 of the 60 potential jurors were African American.[1] An evidentiary hearing is unwarranted unless the defendant can demonstrate a prima facie violation of the right to a fair cross-section of the community in a jury pool. *Valentine v. State*, 135 Nev. 463, 466, 454 P.3d 709, 714 (2019). To make such a prima facie challenge, the defendant must show three things, one of which is that the underrepresentation of a distinctive group in the community "is due to systematic exclusion of the group in the jury selection process." *Evans v. State*, 112 Nev. 1172, 1186, 926 P.2d 265, 275 (1996) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Ortiz was unable to demonstrate that

---

[1]Because the parties are familiar with the facts, we do not recount them except as necessary to our disposition.

21-07932

African Americans were systematically excluded as it was unclear if the jury commissioner was now receiving jury information from the Employment Security Division of the Department of Employment, Training and Rehabilitation, in addition to other sources, or that even if the jury commissioner was not yet receiving that information, that African Americans were more likely to qualify for unemployment benefits and would be reported in higher numbers from that Department. Thus, we conclude the district court did not abuse its discretion in denying Ortiz's request for an evidentiary hearing on the issue and did not err in denying his motion to strike the jury venire. *Valentine*, 135 Nev. at 465, 454 P.3d at 713 (providing that this court reviews the denial of an evidentiary hearing for an abuse of discretion); *Grey v. State*, 124 Nev. 110, 117, 178 P.3d 154, 159 (2008) (explaining that this court reviews de novo constitutional challenges).

Second, Ortiz contends the State improperly argued Ortiz tailored his trial testimony to the evidence, thereby violating Ortiz's constitutional right to be present at trial. In *Portuondo v. Agard*, 529 U.S. 61, 73 n.4, 75 (2000), the United States Supreme Court concluded that a prosecutor's tailoring argument does not violate the defendant's U.S. Constitutional rights. In a dissenting opinion, Justice Ginsburg, joined by Justice Souter, distinguished between generic and specific tailoring arguments and opined that the former, though not the latter, violated the defendant's right to be present at trial when the defendant was not confronted with the tailoring allegation on cross-examination. *Id.* at 77. This case does not present the generic tailoring issue that divided the Supreme Court in *Portuondo*. The prosecutor addressed tailoring in his cross-examination of Ortiz and his pretrial statements to detectives directly contradicted the consensual-sex defense he presented at trial. Thus, we

need not resolve the question of whether generic tailoring arguments are improper under the Nevada Constitution, because we conclude, after carefully reviewing the record, that even measured by the *Portuondo* dissent standard, the State did not advance an impermissible tailoring argument in this case.

Lastly, Ortiz argues the district court abused its discretion in instructing the jury regarding sexual assault and in refusing to proffer his requested instructions on sexual assault.[2] Because the given jury instruction on sexual assault accurately reflected the law, the district court did not abuse its discretion in issuing that instruction. *See Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) ("The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error."). Further, the district court did not abuse its discretion in refusing to give Ortiz's requested jury instructions regarding sexual assault because the given jury instruction accurately reflected the law and generally encompassed the requested instructions.

---

[2]Ortiz also challenges the reasonable-doubt jury instruction, but we conclude this challenge lacks merit. *See Blake v. State*, 121 Nev. 779, 799, 121 P.3d 567, 580 (2005) (affirming the same reasonable-doubt jury instruction). Further, Ortiz asserts the district court should have given his requested jury instruction that Pineda had to testify with particularity about each count. The district court did not abuse its discretion in refusing to give that jury instruction because the jury was properly instructed regarding the State's burden and the reasonable-doubt standard. *See Rose v. State*, 123 Nev. 194, 205, 163 P.3d 408, 415-16 (2007).

As there are no errors to cumulate,[3] we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Pickering

cc:    Chief Judge, Eighth Judicial District Court
       Hon. Michelle Leavitt, District Judge
       Special Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[3]We conclude the district court did not abuse its discretion in denying Ortiz's motion for a mistrial after the jury witnessed part of Castro's emotional reaction on the witness stand because the district court properly addressed the potential prejudice by canvassing the jury about what they had seen and dismissing the only juror who questioned her ability to be fair and impartial as a result of Castro's reaction. *Parker v. State*, 109 Nev. 383, 388-89, 849 P.2d 1062, 1066 (1993) (providing that this court reviews the denial of a motion for a mistrial for an abuse of discretion).

SILVER, J., with whom, STIGLICH, J., agrees, concurring:

I agree with the majority's outcome, but I write to express my view that general tailoring arguments are impermissible under Nevada's Constitution.

The Nevada Constitution provides, "in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person, and with counsel." Nev. Const. art. 1, § 8(1). Nevada's Constitution, unlike the United States Constitution, *expressly* guarantees criminal defendants a constitutional right to be present at trial. *Cf.* U.S. Const. Amend. VI (providing criminal defendants the right to a speedy trial and to "be confronted with the witnesses against him"). *Portuondo v. Agard* only addressed general tailoring arguments in the context of the *federal* constitutional right. 529 U.S. 61, 64-73 (2000). But because criminal defendants in Nevada have an express *state* constitutional right to be present, in person, at trial, it follows that the State may not later use the defendant's exercise of that right against him at trial. *Cf. Doyle v. Ohio,* 426 U.S. 610, 618-19 (1976) (holding a prosecutor cannot use a defendant's silence following a *Miranda* warning to impeach the defendant's testimony at trial); *Griffin v. California,* 380 U.S. 609, 613-14 (1965) (holding a prosecutor could not comment on a defendant's refusal to testify); *Harkness v. State,* 107 Nev. 800, 803, 820 P.2d 759, 761 (1991) (addressing the rule from *Griffin*); *Bernier v. State,* 96 Nev. 670, 671-72, 614 P.2d 1079, 1080 (1980) (addressing the rule from *Doyle*).

The *Portuondo* dissent, penned by Justice Ginsburg, speaks directly to the danger of allowing the State to use the defendant's mere presence at trial to impeach the defendant's testimony at a time when the

defendant cannot respond. 529 U.S. at 76-88 (Ginsburg, J., dissenting). Justice Ginsburg explained that the purpose of trial, ideally, is to discover the truth. *Id.* at 77. Yet, because all defendants who attend trial and then testify are equally vulnerable to general tailoring accusations regardless of the defendant's actual truthfulness or deceit, a generic tailoring argument advanced on summation "transforms a defendant's presence at trial from a Sixth Amendment right into an automatic burden on his credibility." *Id.* at 76. Justice Ginsburg argued, therefore, that where the defendant's exercise of a constitutional right "is 'insolubly ambiguous' as between innocence and guilt," the State may not "urg[e] the jury to construe the ambiguity against the defendant." *Id.* at 77 (internal citation omitted). The truth-seeking function of trial is not advanced, she wrote, "by allowing a prosecutor, at a time when the defendant cannot respond, to invite the jury to convict on the basis of conduct as consistent with innocence as with guilt." *Id.* at 79.

Because I believe the *Portuondo* majority does not adequately protect criminal defendants' rights under the Nevada Constitution, I would adopt Justice Ginsburg's dissent and clarify that general tailoring arguments advanced during summation violate a criminal defendant's state constitutional rights.[1] Such would accord with this court's prior

---

[1]But, I would diverge from Justice Ginsburg's dissent in that I conclude the State may not advance a general tailoring argument on cross-examination. Because the Nevada Constitution gives the defendant an express right to be present at trial and the prosecutor may not infringe on this constitutional right by advancing a general tailoring argument on summation, the prosecutor would likewise violate the defendant's state constitutional rights by advancing a general tailoring argument on cross-examination. *Cf. Doyle*, 426 U.S, at 618-19 (explaining that where the defendant has the right to remain silent following a *Miranda* warning, the

Supreme Court
of
Nevada

(O) 1947A

determination in *Woodstone v. State*, Docket No. 74238 (Order of Affirmance, February 22, 2019), wherein we expressed concern over a general tailoring argument made during closing and acknowledged "the burden this prosecutorial practice imposes on a defendant's constitutionally protected right to be present at his own trial."[2] *Id.* at 2. Although we ultimately did not reach the constitutional issue in *Woodstone, see id.*, our decision nevertheless underscores the *Portuondo* decision's failure to adequately protect a criminal defendant's Nevada constitutional rights. Nor would we be alone in recognizing that a prosecutor may not infringe upon a criminal defendant's state constitutional rights and that preserving these rights is essential to a fair trial. *See, e.g., State v. Mattson*, 226 P.3d 482, 495-96 (Haw. 2010).

In sum, I would conclude that a general tailoring argument made during summation would serve to discourage criminal defendants from exercising their constitutional rights and is not only improper, but unconstitutional. *Cf. id.* I would not, therefore, allow the State to subvert a defendant's state constitutional rights by advancing a general tailoring argument during closing, when the jury has no opportunity to "measure a defendant's credibility by evaluating the defendant's response to the accusation, for the broadside is fired after the defense has submitted its case." *Portuondo*, 529 U.S. at 78.

---

State may not impeach the defendant on cross-examination for exercising that right).

[2]During oral argument on appeal, the State contended it could properly advance any tailoring argument at any time pursuant to *Portuondo*. I would disavow the State's position pursuant to the Nevada Constitution and in accordance with *Woodstone*.

In my view, the State advanced an improper general tailoring argument here. The record shows the prosecutor did not argue that Ortiz tailored specific points of his testimony to fit particular pieces of evidence. Instead, the prosecutor broadly argued Ortiz tailored his testimony after listening to the evidence at trial. This argument, advanced during summation, did not aid the truth-finding function of trial. Rather, the prosecutor's argument effectively penalized Ortiz for exercising his constitutional right to be present at trial.

Nevertheless, I agree affirmance is proper because the error here was harmless under the *Chapman* standard.[3] Ortiz concedes the sexual conduct occurred but argues it was consensual because he and the victim were lovers, and contends the testimony at trial was "counter-intuitive" to the charges. But a review of the record shows this was not, as Ortiz argues, a "he said, she said" case with little evidence to corroborate the victim's testimony. Although it is true that only the victim provided details of the rape, other testimony and evidence corroborates that the sex was not consensual and that Ortiz committed the charged crimes. In particular, the following points support a finding of harmless error under *Chapman*. Several witnesses testified to the victim's severe distress following the incident. The victim's daughter gave eyewitness testimony that Ortiz demanded a car and socks and that the victim, who was frightened and crying, told the daughter to cooperate with Ortiz's demands.

---

[3]Pursuant to *Chapman v. California*, 386 U.S. 18 (1967), when a defendant demonstrates constitutional error this court will reverse unless the State shows "beyond a reasonable doubt[ ] that the error did not contribute to the verdict" and is therefore harmless error. *Valdez v. State*, 124 Nev. 1172, 1188-89, 196 P.3d 465, 476 (2008); *see also* NRS 178.598; *Belcher v. State*, 136 Nev., Adv. Op 31, 464 P.3d 1013, 1023 (2020).

The victim further testified Ortiz went into her son's room to steal marijuana, and her son gave corroborating testimony that he kept marijuana in his room, that a passerby could smell the marijuana, and that property was stolen from his room. Responding officers found a trail of stolen jewelry down the street and through a nearby wash. The sexual assault nurse testified to finding bruises on the victim's leg and urethral wall, redness on her posterior fourchette, and divots inside her vagina. Finally, the State attacked Ortiz's credibility on the witness stand by raising evidence of inconsistencies between Ortiz's statements to police and his testimony at trial, thereby demonstrating to the jury that Ortiz was not a credible witness.

In short, overwhelming evidence corroborates the victim's account and supports the verdict. Under these facts, I conclude that any error was ultimately harmless, and I agree in the result.

_____, J.
Silver

I concur:

_____, J.
Stiglich