ROBERT GORDON JOHNSTONE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 8163

April 26, 1976          548 P.2d 1362

*Raymond E. Sutton,* Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *George Holt,* District Attorney, *Dan Seaton* and *Rimantas A. Rukstele,* Deputy District Attorneys, Clark County, for Respondent.

# OPINION

By the Court, GUNDERSON, C. J.:

Appellant Robert Johnstone stands convicted of murdering Eugene and Mary Carone, tourists stabbed to death December 18, 1971, in room 5212 of the Westward Ho Motel, at Las Vegas, Nevada. Claude Theriault and Lloyd Paulette have heretofore been tried for the Carone murders, sentenced to life imprisonment without possibility of parole, and this court has affirmed their convictions on appeal. Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976); Paulette v. State, 92 Nev. 71, 545 P.2d 205 (1976). Here appellant Johnstone, whose connection with the crimes is inferable only from later possession of Carone credit cards, and from criminal association with Theriault and Paulette, contends his conviction should be reversed because the district court: (1) refused an instruction appellant proffered concerning circumstantial evidence; (2) lacked jurisdiction to try a nonresident alien; and (3) refused to admit statements that absent witnesses had made to an investigating detective, from which the jury might have inferred appellant did not participate in the murders.

Appellant's first contention is repelled by this court's decision in Bails v. State, 92 Nev. 95, 545 P.2d 1155 (1976). See also: Holland v. United States, 348 U.S. 121 (1954). Appellant's second argument was reviewed and rejected in Paulette v. State, 92 Nev. 71, 545 P.2d 205 (1976). However, appellant's third assignment of error has merit, and necessitates a new trial.

Circumstantial evidence linking Theriault and Paulette to the Carone murders is strong. It appears that, the day following the crime, Paulette pawned Mrs. Carone's rings in Las Vegas, after which Paulette and Theriault fled to California together in the victims' car. Theriault's fingerprints were found in the

Carones' room. Theriault's fingerprints, and Paulette's, were found in the victims' abandoned car. Theriault and Paulette were apprehended together at San Diego, in another stolen car, in possession of a knife with a blood-stained sheath. The blood on the sheath and on Paulette's leather jacket was type A, as was that of Mr. and Mrs. Carone. Paulette and Theriault both have type O blood.

At trial, appellant unsuccessfully sought to introduce statements Detective Lee elicited from a married couple staying in room 5228 at the Westward Ho Motel. According to Lee, the couple said that at approximately 9:30 p.m., December 18, 1971, they decided to take their dog for a walk, left their room, and proceeded downstairs. They observed two dirty appearing white males with hair down to their collars, one possibly a Mexican, standing in the parking lot. The couple did not like their appearance, and turned to go back to their room. The two unkempt men thereupon asked directions to room 1214. The husband informed them that they were at the building containing the 5200 room series, and that room 1214 was in another building. The couple then retreated to their room and locked the door. Defense counsel could not locate the couple to testify at trial, and thereafter attempted unsuccessfully to show their statements through Lee's testimony.

Appellant testified he, Paulette and Theriault left Canada in a stolen Ford Mustang which they abandoned in Idaho Falls, where Theriault stole a 1969 Ford. The trio arrived in Las Vegas, December 17, 1971, and eventually checked into the Westward Ho Motel, Room 1214. On the evening of December 18, 1971, they drove around town, then returned to the motel parking lot, and parted company. Some thirty or forty minutes later, appellant returned to room 1214, where he found Paulette and Theriault, both with blood smeared over their clothes. Theriault had Eugene Carone's credit cards in his possession, some of which he gave to appellant. Next morning, Paulette and Theriault left the motel in the victims' car. Appellant left in the 1969 Ford, using the credit cards to travel across the country before being apprehended in Florida.

It is apparent that the detective's report contained evidence important, if not essential, to appellant's defense; for it lent credence to an otherwise most questionable story. Since it was inferable from the other evidence that both Theriault and Paulette participated in the Carone murders, if the jury had been allowed to know that only two persons with a connection to room 1214 had been prowling near the Carone room on the evening of those murders, then they might well have accepted

appellant's testimony that he was not with his traveling companions when they killed the Carones. Appellant therefore contends the couple's statements, as given to Detective Lee, should have been admitted pursuant to NRS 51.075. We agree.

According to Nevada's Evidence Code, adopted in 1971, a statement is not excluded by the hearsay rule if its nature and the circumstances under which it is made offer "assurances of its accuracy not likely to be enhanced by calling the declarant as a witness." NRS 51.075; see also, NRS 51.315.[1] Our statutes thus endorse Judge Learned Hand's observation that "the requisites of an exception to the hearsay rule are necessity and circumstantial guaranty of trustworthiness." G. & C. Merriam Co..v. Syndicate Pub. Co., 207 F. 515, 518 (2 Cir. 1913); see also, Dallas County v. Commercial Union Assurance Co., 286 F.2d 388, 395 (5 Cir. 1961). Our Evidence Code explicitly disavows any attempt to limit hearsay rule exceptions to some preconceived list; for it twice declares that expressly stated exceptions are "illustrative and not restrictive." See, again: NRS 51.075(2) and NRS 51.315(2). It therefore is this court's obligation to decide whether the general criteria recognized in NRS 51.075(1) and NRS 51.315(1) are satisfied in the instant case. We believe they are.

Here, the couple interviewed by Detective Lee had no evident involvement with the police, the accused, or the victims. The prosecution does not suggest either Detective Lee or the absent witnesses had any motivation whatever to lie, or to assist appellant in any way. Indeed, apparently the declarants had no capacity even to know what might, or might not, ultimately assist appellant. There was not one, but two, declarants, and evidently material aspects of their recollections agreed: they saw only two unkempt men in the vicinity of the Carone

---

[1]NRS 51.075 provides:

"1. A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though he is available.

"2. The provisions of NRS 51.085 to 51.305, inclusive, are illustrative and not restrictive of the exception provided by this section."

NRS 51.315 also provides:

"1. A statement is not excluded by the hearsay rule if:

"(a) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and

"(b) The declarant is unavailable as a witness.

"2. The provisions of NRS 51.325 to 51.355, inclusive, are illustrative and not restrictive of the exception provided by this section."

murder room; one of those two men referred to room 1214, where the three men ultimately accused of murdering the Carones were lodged. It is doubtful that cross-examination would alter these critical aspects of the couple's simple story. While a serious argument might be made that exclusion of the evidence would violate the due process clause by withholding evidence favorable to the defendant, no Sixth Amendment confrontation clause problem exists where, as here, evidence favorable to an accused is offered.[2]

In light of the foregoing, we therefore hold that the excluded evidence, which manifestly was important to appellant's theory of noninvolvement in the murders, should have been admitted pursuant to NRS 51.075 and NRS 51.315. Compare: People v. Lettrich, 108 N.E.2d 488 (Ill. 1952), holding that a third party's hearsay confession should have been admitted in the interest of justice; and United States v. Melillo, 275 F.Supp. 314 (E.D.N.Y. 1967), holding highly probative hearsay admissible in an income tax evasion case.

Reversed and remanded for a new trial.

ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.

BATJER, J., dissenting:

I do not believe the trial judge committed reversible error in refusing to allow the investigating officer to repeat from his police report what he had been told by the married couple and as a consequence I respectfully dissent.

Hearsay is inadmissible as evidence except as provided in NRS Chapter 51, NRS Title 14 and the Nevada Rules of Civil Procedure. In an apparent effort to avoid a conflict between the Confrontation Clause of the Sixth Amendment, United States Constitution, and the hearsay rule, the exceptions set forth in NRS 51.075 to NRS 51.305, and NRS 51.315 to NRS 51.355 are stated in terms of exemption from the general mandate of the hearsay rule rather than in terms of admissibility. Cf. Brookhart v. Janis, 384 U.S. 1 (1966); Pointer v. Texas, 380 U.S. 400 (1965); Douglas v. Alabama, 380 U.S. 415 (1965).

Factual findings resulting from an investigation made pursuant to authority granted by law and admissible against the

---

[2]See: J. Weinstein, Alternatives to the Present Hearsay Rules, 44 F.R.D. 375, 385 (1968), written before adoption of the new federal rules. Compare: People v. Crump, 125 N.E.2d 615 (Ill. 1955).

state pursuant to NRS 51.155[1] refers to facts within the personal knowledge of the reporting officer and not to hearsay statements or conclusions or opinions of others contained in official reports. See Orth v. Bauer, 429 P.2d 279 (Colo. 1967).

Police reports are not admissible for the sole purpose of establishing the truth of the matter asserted by a third party informant. The recital of a statement of others in a police report is hearsay within hearsay or "double hearsay," NRS 51.365,[2] and is inadmissible upon proper objection unless it comes within a recognized exception to the hearsay rule independent of the business or public record exception, NRS 51.135[3] and NRS 51.155. Cf. In re Estate of Paulos, 229 N.W.2d 721 (Iowa 1975); Westinghouse El. Corp. v. Dolly Madison L. & F. Corp., 326 N.E.2d 651 (Ohio 1975).

I believe the statements made by the married couple and recorded by the detective during his investigation are inadmissible under NRS 51.135 or NRS 51.155, and the trial court committed no error in excluding them. Compare United States v. Smith, 521 F.2d 957 (D.C. Cir. 1975), where it was held that a police report and broadcast transcript were admissible on the defendant's behalf as business records to impeach the credibility of the complaining witness who was the declarant. Federal Rules of Evidence, Rule 803(6).

I further believe that the excluded statements are inadmissible within NRS 51.075, which is a recognized exception of the hearsay rule independent of the business or public record exception.

---

[1]NRS 51.155: "Records, reports, statements or data compilations, in any form, of public officials or agencies are not inadmissible under the hearsay rule if they set forth:

"1.   The activities of the official or agency;

"2.   Matters observed pursuant to duty imposed by law; or

"3.   In civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or the method or circumstances of the investigation indicate lack of trustworthiness."

[2]NRS 51.365: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms to an exception to the hearsay rule provided in this chapter."

[3]NRS 51.135: "A memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, is not inadmissible under the hearsay rule unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

Our statute was designed to permit the admission of hearsay evidence which imparts a circumstantial guarantee of trustworthiness not otherwise admissible under any other exception. There can be no rigid rule of admissibility for in every case "[t]he test is one of reliability." United States v. Hickey, 360 F.2d 127, 143 (7th Cir. 1966).

The trial judge must be left some discretion to decide whether the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness or whether the nature of the recorded statement and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness. United States v. Bohle, 445 F.2d 54 (7th Cir. 1971).

Here the trial judge, without specificity, indicated that he did not believe the material in the investigator's report to be trustworthy or reliable. The statements sought to be admitted for the truth of the matter reported contained not only double hearsay statements made by the married couple to the investigator about what they observed but triple hearsay statements made by the two unkempt persons to the couple. NRS 51.365. There is no foundation in the record to indicate that the reporting couple were able to accurately perceive, hear or remember what they related to the investigator. I would affirm the judgment of the district court.