## FRANK DELANO VIPPERMAN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 11634

July 21, 1980                                    614 P.2d 532

[Rehearing denied October 7, 1980]

Gunderson, J., dissented.

*Jeffrey Sobel,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, Manoukian, J.:

Appellant, Frank Delano Vipperman, appeals from a conviction by jury of murder in the second degree. He was sentenced to life imprisonment. There are several assignments of error. We have determined, however, that only one issue warrants our consideration—that is, whether the trial court erred in excluding proffered evidence claimed to have been material to appellant's defense.

On April 20, 1973, William Parquette was shot and killed in Las Vegas. Appellant was subsequently charged by information with the homicide.[1] It was the state's theory that a hostile relationship existed between appellant and the victim who were partners in an auto body and used automobile business. The state attempted to show that appellant wanted his money out of the business and that the victim would not give it to him. The partnership agreement provided that in the event of the death of either party, the surviving partner would become the sole owner of all partnership assets. The state essentially argued that appellant dissolved the partnership with a shotgun.

The state presented a witness, Dave McPeak, an employee of the partnership, who testified that he saw appellant shoot Parquette. The witness first testified that he heard appellant threaten the victim during several telephone conversations. He then stated that, on April 20, 1973, he and the victim were working at the used car lot and body shop until about 7:00 p.m. Parquette went to lock up and the witness remained in the body shop. The witness then heard a shot and a scream and went to investigate. The victim was yelling "Frank shot me" as he held his wrist and was spinning around. The witness was about to help when he saw appellant standing nearby with a gun. The witness turned, the gun went off, and he crawled underneath a car before running to the building next door.

There was additional testimony as to threats by appellant against the victim. The state also pointed out that appellant was able to account for every minute he spent on that day, except for the period between 7:00 and 10:00 p.m. Appellant attempted to show that McPeak, the alleged eye witness, was in fact lying and that appellant did not kill the victim. Vipperman testified that the friction between the two men was due in large part to the fact that the victim was not conducting the business responsibly. Because of that, appellant decided that he wanted to dissolve the partnership. In furtherance of this decision, appellant called the FBI and the Department of Motor Vehicles in order to report Parquette's involvement in stolen automobiles which Parquette and a girl living with him had obtained. Appellant testified that he had asked Parquette if there was any way he could get his share of partnership money back. It was

---

[1]Appellant was previously convicted of second degree murder. That conviction was reversed by this court. Vipperman v. State, 92 Nev. 213, 547 P.2d 682 (1976) (district attorney's repeated questioning of defendant with regard to his failure to reveal alibi to police constituted prejudicial error). Appellant was subsequently retried and convicted. It is the second conviction which prompts the instant appeal.

on this occasion that appellant purportedly was informed by Parquette that he knew appellant had turned Parquette in to the authorities. Appellant also testified that Parquette said that the only thing that appellant was going to get out of him was "a face full of desert."

When appellant was told this, he decided to leave for California. He was scared and nervous. On the day of the homicide, appellant purchased a shotgun from a pawnshop believing that he could discourage Parquette if Parquette saw that appellant had a gun. Appellant also testified that he was certain that Parquette would have somebody after him and appellant stated that on that day he saw men following him. Appellant testified that he missed his scheduled plane to California and then went to the bus station. He left his suitcase in a locker at the bus station and took a cab from downtown. Appellant said that he took his car downtown and parked at a hotel, leaving the shotgun in the car. He testified that he met a girl at a downtown casino and spent time with her from 7:00 to 10:00 p.m., after having been drinking all day. When he returned to his car, he discovered that the shotgun was missing. When he arrived back at his house, he was arrested.

Vipperman first testified without objection to the fact that he had contacted the FBI and the Department of Motor Vehicles with regard to Parquette's involvement with stolen vehicles. Appellant then introduced the testimony of an FBI agent who stated that the FBI had received information of the possible involvement of Parquette in the possession of stolen cars. Appellant attempted to elicit testimony from the agent as to what happened as a result of that information. According to the offer of proof, the agent would testify that the FBI had the Las Vegas Police impound stolen vehicles found at Parquette's home one week after the homicide and, shortly thereafter, the FBI terminated its investigation. Vipperman argued that this testimony would directly corroborate appellant's testimony that Parquette was in fact dealing in stolen cars and that Parquette made the threat to appellant that he would get "a face full of desert." The state argued that not only was this hearsay, but that what transpired subsequent to the death of Parquette was irrelevant and immaterial to the case. The objection was sustained. Appellant also attempted to introduce the testimony of a records supervisor from the Las Vegas Metropolitan Police Department which indicated that the vehicles found on the property next to the body shop were actually stolen. The court also sustained the objection to this offer and stated that the fact that the victim was dealing illegally in stolen cars was irrelevant, immaterial and remote. In the context of this case, we agree.

The fact that stolen vehicles were found on the victim's property after his death may be relevant toward showing that he was dealing in stolen cars and may have threatened appellant, but such fact is not *material* to whether or not appellant killed Parquette. *See* Conforte v. State, 77 Nev. 269, 362 P.2d 274 (1961). Our statutes provide that evidence is relevant and admissible if it has "any tendency to make the existence of any fact *that is of consequence to the determination of the action* more or less probable than it would be without the evidence." NRS 48.015 (emphasis added). The evidence which was admitted, if believed, makes it rather clear that Parquette knew he had been turned in by appellant and it is very likely Parquette made the threat appellant said was made. But appellant's sole defense was that of alibi. Therefore, even though the excluded evidence was offered to prove that it was more likely Parquette made a threat than it would have appeared without the evidence, such evidence was simply not "of consequence to the determination of the action."

Appellant argues, citing Johnstone v. State, 92 Nev. 241, 548 P.2d 1362 (1976), that the evidence was admissible and highly relevant and that this was evidence which could have been used by the jury as a basis for acquittal. In *Johnstone,* hearsay testimony tended to prove that appellant was not with companions when they killed the victims. There was a logical connection between the evidence and appellant's claim that he did not commit the crime. In the instant case, appellant contended that he did not commit the crime and was with an unidentified female at the time the homicide occurred. The evidence that stolen vehicles were found on the victim's property and the fact that the stolen car investigation ceased after Parquette's death were proffered to prove involvement with stolen cars and to substantiate the fact that a threat was made by Parquette. These matters would tend to prove a claim of self-defense or provocation by appellant rather than an alibi. Appellant, though, failed to claim self-defense or provocation. Had he done so, the evidence likely would have been relevant. The *only* reason proffered for introduction of the evidence was to corroborate appellant's position as to threats made by the victim[2] and was thus properly excluded.

---

[2]In closing argument, the prosecutor said that defense counsel might claim the homicide was committed by Jack Heath "to put the quietus on this investigation into stolen cars." The prosecutor also said it was ridiculous to believe that an investigation would be dropped if the victim was killed. Defense counsel claimed that this argument was improper since the defense previously was unable to show that the investigation did in fact cease. It must be emphasized, however, that at no time did appellant assert that evidence of the investigation being stopped would tend to show that another person committed the homicide. Again, the only reason given at the time the evidence was proffered was

The due process clauses in our constitutions assure an accused the right to introduce into evidence any testimony or documentation which would tend to prove the defendant's theory of the case. United States v. Nixon, 418 U.S. 683, 711 (1974); State v. Fouquette, 67 Nev. 505, 514, 221 P.2d 404, 409 (1950). In this case, appellant fully presented his defense, including the alibi theory, and presented favorable character testimony, evidence of his intoxication, and even irrelevant evidence of the decedent's probable involvement with stolen vehicles. The trial court properly ruled that the evidence appellant attempted to elicit through law enforcement authorities was confusing, misleading, remote and unduly time-consuming. NRS 48.035. The evidentiary exclusion did not constitute an improper obstruction into matters relevant and material to appellant's case. The substantial rights of the accused were not violated. NRS 47.040, 177.255, 178.598.

Other contentions of error are wholly without merit. We affirm the judgment of conviction.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

I respectfully dissent.

To prove appellant killed Parquette, the State established that appellant had purchased the death weapon on the day of the homicide. Interpreted as an act of preparation, this purchase inferentially helped evidence appellant's presence and participation in Parquette's murder.

Attempting to prove his theory of the case, i.e. that another had killed Parquette, while he himself was elsewhere, it obviously became important for appellant to establish the innocent nature of the purchase, from which his preparation and guilt might otherwise be inferred. For this purpose, evidence corroborating appellant's explanation that the weapon had not been purchased as preparation for Parquette's murder, but for self-defense, was clearly relevant.

Thus, it is unclear to me how it may logically be said that the evidence in question "was simply not 'of consequence to the determination of the action.' "

---

that it would corroborate appellant's testimony that he was threatened by Parquette. As such, the court did not err in excluding evidence that the investigation ceased based on reasons then presented by appellant attempting to show relevance.