**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD SHERMAN,

    *Petitioner-Appellant*,

  v.

WILLIAM GITTERE, Warden;
AARON DARNELL FORD, Attorney
General of Nevada,

    *Respondents-Appellees*.

No. 16-99000

D.C. No. 2:02-cv-
01349-LRH-VCF

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted September 20, 2023
San Francisco, California

Filed February 9, 2024

Before: Ronald M. Gould, Bridget S. Bade, and Patrick J.
Bumatay, Circuit Judges.

Opinion by Judge Bumatay

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel affirmed the district court's denial of Donald Sherman's 28 U.S.C. § 2254 habeas corpus petition challenging his Nevada conviction and death sentence for robbery, burglary, and the first-degree murder of Dr. Lester Bauer.

The district court granted a certificate of appealability on Sherman's claim that the trial court violated Sherman's constitutional right to present a defense by excluding certain impeaching evidence about Dr. Bauer's daughter, whom Sherman had dated.

Sherman argued that de novo review, rather than the Antiterrorism and Effective Death Penalty Act's deferential standard, applies to his right-to-present-a-complete-defense claim. The panel wrote that Sherman waived this issue by not presenting it to the district court and that AEDPA review applies in any event because Sherman did not rebut the presumption that the Nevada Supreme Court adjudicated his federal constitutional claim on the merits.

On the merits, the panel held that Sherman did not show that the Nevada Supreme Court's denial of his right-to-present-a-complete-defense claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

determination of the facts. The panel wrote the Nevada Supreme Court's rulings on the exclusion of the evidence under Nev. Rev. Stat. § 50.085(3) (generally prohibiting the use of extrinsic evidence to prove specific instances of conduct to undermine a witness's credibility) and Nev Rev. Stat. § 48.035(1) (permitting the exclusion of evidence if its probative value is substantially outweighed by the danger of issue confusion or misleading the jury) were not contrary to, or an unreasonable application of, clearly established federal law. The panel concluded that the Nevada Supreme Court's alternative conclusion that any error was harmless was not unreasonable.

In a concurrently filed memorandum disposition, the panel declined to expand the certificate of appealability to include other claims.

---

## COUNSEL

David Anthony (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Las Vegas Federal Public Defender's Office, Las Vegas, Nevada; for Petitioner-Appellant.

Heather D. Procter (argued), Deputy Attorney General; Aaron D. Ford, Nevada Attorney General; Nevada Attorney General's Office, Carson City, Nevada; Erica Berrett, Senior Deputy Attorney General; Nevada Attorney General's Office, Las Vegas, Nevada; for Respondents-Appellees.

# OPINION

BUMATAY, Circuit Judge:

On June 1, 1994, Dr. Lester Bauer was found bludgeoned to death in his home in Las Vegas, Nevada. The next day, Donald Sherman, who had dated Dr. Bauer's daughter, was arrested for his murder. In February 1997, a Nevada jury found Sherman guilty of robbery, burglary, and first-degree murder. The jury determined that the aggravating circumstances outweighed the mitigating circumstances and imposed the death penalty. The Nevada Supreme Court affirmed Sherman's convictions and sentence on direct appeal.

Following unsuccessful postconviction petitions in state court, Sherman raised several claims in a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. The federal district court later denied the petition but granted a certificate of appealability on a single claim—whether the trial court violated Sherman's constitutional right to present a complete defense by excluding certain impeaching evidence about Dr. Bauer's daughter. Sherman now appeals this ruling.

Because the Nevada court's resolution of this right-to-a-complete-defense claim was not "contrary to, or . . . an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts," we affirm. *See* 28 U.S.C. § 2254(d)(1)–(2). Sherman also seeks to expand the certificate of appealability to include seven other claims. In a concurrently filed memorandum, we deny the certificate for each of the uncertified claims.

## I.

Sherman began dating Dianne Bauer in 1992, moving into her Longview, Washington house soon after. Dianne would regularly visit her father, Dr. Bauer, in Las Vegas while she and Sherman dated. The following year, Dianne and Sherman relocated to Alaska but then broke up. According to Dianne, in April 1994, while she was driving on a highway, she saw Sherman in another car—Sherman then pointed his hand, shaped as a gun, at her.

On May 1, 1994, Dianne's friend, Erin Murphy, informed her that Sherman was going to Las Vegas and that she feared he would harm Dr. Bauer. Murphy told Dianne that she should tell her father and the Las Vegas Police Department. Dianne says that she informed her brother, the Longview Police Department, and the FBI about the danger Sherman posed to her father.

On June 1, 1994, after receiving a call from a concerned neighbor, a Las Vegas police officer went to check on Dr. Bauer at his home. The officer noticed that one of the front windows was ajar and the screen was placed backward. She entered through the window and found Dr. Bauer dead, lying in a bed covered in blood. Blood was splattered across the headboard and bedroom walls, and soaked the blankets on the bed. The officer observed that a blood-spattered telephone receiver had been removed from the bedroom and placed in the hallway.

The autopsy report showed that Dr. Bauer was struck in the head with a hammer five to seven times. Although the strikes were hard enough to fracture his skull and damage his brain, Dr. Bauer did not die instantly. The medical examiner concluded that Dr. Bauer likely died between the night of May 29 and the early hours of May 30.

Meanwhile, Sherman stayed at a local Las Vegas hotel from May 28 to May 31, 1994, which coincided with the murder. On May 30, Sherman called Swinging Susie's, an escort service, and asked for an escort to meet him at his hotel room. An escort, "Paige," met with Sherman, who introduced himself as "Dr. Bauer." Sherman paid for Paige's services with Dr. Bauer's credit card and signed the receipt as "Dr. Lester Bauer." Paige returned to Sherman's hotel the next morning, May 31.

Later on May 31, Sherman checked into a hotel in Santa Barbara, California. Again, he introduced himself as "Lester Bauer," paid with Dr. Bauer's credit card, and signed the receipt as "Dr. Lester Bauer."

On June 2, Santa Barbara law enforcement arrested Sherman while he slept in Dr. Bauer's stolen car. Inside Sherman's wallet the officers found Dr. Bauer's credit cards and restaurant and jewelry-store receipts signed by "Lester Bauer."

Sherman was charged with robbery, burglary, and first-degree murder. During the guilt phase of his trial, the jury found Sherman guilty on all counts. At the penalty phase, the jury found four aggravating circumstances: (1) Sherman had been convicted of another murder;[1] (2) Sherman was under a sentence of imprisonment when he committed the murder; (3) the murder was committed during a burglary; and (4) the murder was committed during a robbery. The jury also found three mitigating circumstances: (1) the murder was committed when Sherman was under the

---

[1] In 1981, as a juvenile, Sherman was arrested for murdering 62-year-old Harold Marley in his Idaho grocery store. Sherman pleaded guilty and received a life sentence with the possibility of parole. He was paroled in 1992.

influence of an extreme mental or emotional disturbance; (2) Sherman acted under duress or domination of another person; and (3) "other mitigating circumstances." The jury determined that the aggravating circumstances outweighed the mitigating circumstances and returned a death sentence.

On direct appeal, the Nevada Supreme Court affirmed Sherman's convictions and sentence. The United States Supreme Court declined Sherman's petition for writ of certiorari. *Sherman v. Nevada*, 526 U.S. 1122 (1999). Next, Sherman filed a state habeas petition, which the Nevada trial court denied, and the Nevada Supreme Court affirmed the denial.

Sherman then filed a federal habeas petition under 28 U.S.C. § 2254 in 2002 and a first amended petition in 2005. This petition was held in abeyance while Sherman returned to state court to exhaust his claims. Sherman filed a second state habeas petition, which the Nevada trial court denied as procedurally barred. The Nevada Supreme Court then affirmed and denied a petition for rehearing.

The federal habeas proceedings were then reopened, and Sherman filed his second amended petition. The State of Nevada moved to dismiss the petition. The federal district court dismissed several claims as procedurally defaulted and denied the remaining claims on the merits. The district court later denied Sherman's motion for reconsideration. This appeal follows.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a) and review the district court's denial of the petition de novo. *See Avena v. Chappell*, 932 F.3d 1237, 1247 (9th Cir. 2019).

## II.

In his certified claim, Sherman alleges that the state trial court violated his constitutional right to present a complete defense by excluding certain testimony impeaching Dianne Bauer, which he asserts prevented him from presenting his theory of defense. *See California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (holding that the defendant's "opportunity [to be heard] would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on . . . the defendant's claim of innocence").

At the close of its case-in-chief, the State orally moved in limine to bar Sherman from eliciting testimony from other witnesses that (1) Dianne had told people that her father molested her when she was a child and (2) contradicted Dianne's testimony that Sherman threatened her on a highway in Alaska. The prosecutor argued that these topics were collateral matters that could not be impeached with extrinsic evidence under Nevada Revised Statute ("Nev. Rev. Stat.") § 50.085(3). Sherman opposed the motion. According to Sherman, this evidence would counter the State's narrative that Sherman killed Dr. Bauer to hurt Dianne after she broke up with him. Instead, Sherman believes this evidence would show that Dianne was not a loving or caring daughter and that she manipulated Sherman into confronting Dr. Bauer.

The trial court ruled that this evidence went to collateral matters and granted the State's motion under Nev. Rev. Stat.

§ 50.085(3).**²**  On direct appeal, the Nevada Supreme Court affirmed.  On federal habeas review, the district court ruled that the Nevada Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law.  The district court also concluded that, even if the evidentiary ruling was a constitutional violation, it was harmless error under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  The district court then granted a certificate of appealability on Sherman's claim that the state court's evidentiary ruling violated his constitutional right to present a complete defense.

## A.

Before turning to the merits of this claim, we address the proper standard of review.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "sharply limits" our review of any claim adjudicated on the merits in state court. *Johnson v. Williams*, 568 U.S. 289, 298 (2013).  We may not grant a petition on an adjudicated claim unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  But for any claim not adjudicated on the merits by the state court, our review is de novo.  *See Patsalis v. Shinn*, 47 F.4th 1092, 1097–98 (9th Cir. 2022).

---

[2] Under the Nevada law, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime, may not be proved by extrinsic evidence." Nev. Rev. Stat. § 50.085(3).

For the first time on appeal, Sherman argues that de novo review, not AEDPA's deferential standard, applies to his right-to-present-a-complete-defense claim because the Nevada Supreme Court failed to adjudicate it on the merits. Sherman contends that Nevada's highest court "overlooked" his federal constitutional claim and denied the claim solely on state-law grounds. To begin, Sherman waived this issue by not presenting it to the district court. *See Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir. 2006). In any event, we apply AEDPA deference here.

As we recently stated, "[w]hen a petitioner presents a federal claim 'to a state court and the state court has denied relief,' we presume that 'the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" *Patsalis*, 47 F.4th at 1098 (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)). We apply this presumption "even when the state court resolves the federal claim in a different manner or context than advanced by the petitioner so long as the state court 'heard and *evaluated* the evidence and the parties' substantive arguments.'" *Id.* (quoting *Johnson*, 568 U.S. at 302 (emphasis in original)).

We adhere to this "strong" presumption because "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference." *Johnson*, 568 U.S. at 298. And so federal habeas law "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Id.* (quoting *Richter*, 562 U.S. at 100). Thus, the presumption applies "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Id.* at 301.

But this presumption can be "rebutted" in "limited" or "unusual circumstances." *Id.* at 301–02. Thus, for example, the presumption doesn't hold if the federal claim was "rejected as a result of sheer inadvertence." *Id.* at 302–03. Even so, to show this, "the evidence" must "very clearly" lead to "the conclusion that a federal claim was inadvertently overlooked in state court." *Id.* at 303.

Here, Sherman has not rebutted the presumption that the Nevada Supreme Court adjudicated his federal claim on the merits. Instead, we conclude that the state court "heard and *evaluated* the evidence and the parties' substantive arguments" regarding Sherman's federal right-to-a-complete-defense claim. *Patsalis*, 47 F.4th at 1098 (quoting *Johnson*, 568 U.S. at 302 (emphasis in original)). While Sherman's briefing was "somewhat confusing," *Sherman v. State*, 114 Nev. 998, 1007 (1998), Sherman presented his federal claim to the Nevada Supreme Court in a section of his appellate opening brief entitled "the [trial] court erred in denying Sherman the ability to impeach Dianne Bauer and to establish a defense to the charge of first degree murder." Sherman then discussed the evidentiary and constitutional issues together—with most of the section focused on the evidentiary error. Only in one line of the final paragraph of the section did Sherman contend the evidentiary "ruling deprived Sherman of an effective defense under the Sixth Amendment and violated his right to a fundamentally fair trial and due process of law." Indeed, Sherman's briefing failed to cite a single federal case discussing the constitutional right to present a complete defense.

Despite this lack of clarity, the Nevada Supreme Court's decision reflects its understanding that the substance of Sherman's evidentiary claim presented a constitutional challenge. It expressly noted Sherman's argument that the

excluded evidence was not "simply attacking Dianne's credibility as a witness," but in fact "tended to support his theory of the case." *Sherman*, 114 Nev. at 1007. The Nevada court recognized that Sherman sought to develop a defense to first-degree murder with the excluded evidence. *Id*. The court recognized Sherman's argument that, had he been permitted to introduce the excluded testimony, he could have shown that "Dianne . . . had somehow provided the impetus for him to make the trip to Las Vegas by playing upon his feelings about child abuse" and that Sherman only entered Dr. Bauer's house to talk to him about his "relationship with Dianne" and "only after he was inside the house did he lose his temper." *Id.* The court noted Sherman's argument that the excluded evidence could have been used to "show[] a lesser degree of culpability on his part." *Id.* at 1006.

The Nevada high court thus understood that Sherman's claim implicated his constitutional rights. While the court didn't expressly purport to decide a federal constitutional question, its discussion of Sherman's defense theory shows that it "understood itself to be deciding a question with federal constitutional dimensions." *See Johnson*, 568 U.S. at 305. By acknowledging that the excluded evidence touched on more than just Dianne's credibility, the court recognized that the evidentiary ruling also pertained to Sherman's constitutional right to present a defense.

And the Nevada Supreme Court's evaluation of the claim shows no basis to rebut the presumption of a merits adjudication. While the state court expressly analyzed the claim under both Nev. Rev. Stat. §§ 50.085(3) and

48.035(1),[3] the court's analysis also suggests acknowledgment of the claim's federal dimensions. *Sherman*, 114 Nev. at 1006–7. Take the court's citation to *Rembert v. State*, 104 Nev. 680, 683 (1988). *Id.* at 1006. *Rembert* considered whether admitting extrinsic evidence contrary to Nev. Rev. Stat. § 50.085(3) resulted in the denial of a "fair trial" and cited *Chapman v. California*, 386 U.S. 18, 24 (1967)—the seminal case on the federal *constitutional* harmless-error standard. *See Rembert*, 104 Nev. at 683–84. Thus, this case is like *Johnson*, in which the Supreme Court observed that it was "[m]ost important" that the Supreme Court of California discussed a state-court opinion which cited several federal cases discussing the constitutional issue. *See Johnson*, 568 U.S. at 304 (citing *People v. Cleveland*, 25 Cal. 4th 466 (2001)).[4]

The Nevada Supreme Court then concluded that the trial court "implicitly found that the evidence was not relevant for any purpose other than impeachment or that any relevance the testimony had toward proving Sherman's theory was substantially outweighed by the risk of misleading the jury or confusing the issues." *Sherman*, 114 Nev. at 1007. After reviewing the record, the Nevada Supreme Court concluded

---

[3] Nev. Rev. Stat. § 48.035(1) states that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or misleading the jury."

[4] While the Nevada Supreme Court did not expressly cite this principle, under Nevada law, the application of Nev. Rev. Stat. § 48.035(1) must comport with the "due process clause[] . . . right to introduce into evidence any testimony or documentation which would tend to prove the defendant's theory of the case." *See Vipperman v. State*, 96 Nev. 592, 596 (1980). So Nevada's standard for evaluating Nev. Rev. Stat. § 48.035(1) is "at least as protective as the federal standard" for evaluating the admissibility of evidence. *Patsalis*, 47 F.4th at 1100.

that excluding the evidence was not "manifestly wrong" and that any error was harmless. *Id.*

While the Nevada Supreme Court could have been more explicit in explaining its ruling, we do not "impose mandatory opinion-writing standards on state courts." *Johnson*, 568 U.S. at 300 (simplified). Indeed, any shortcomings in its decision likely originate from Sherman's briefing. Considering the minimal attention Sherman afforded the federal issue in his briefing, it's understandable that the Nevada court would not opine on it at length. And while Sherman complains that the Nevada court's use of the deferential "manifestly wrong" standard of review means it was ruling only on state-law grounds, Sherman himself argued for the "clearly erroneous" standard in his briefing before that court. Thus, it is "entirely plausible that the [Nevada Supreme Court] applied a deferential standard of review because [Sherman] invited the court to do so—not because it ignored his constitutional claim." *See Hinkle v. Neal*, 51 F.4th 234, 240 (7th Cir. 2022). We do not demand that state courts use magical phrases or minimum word lengths before applying the presumption of adjudication on the merits.

Even more evidence cuts against Sherman's claim that the Nevada court failed to resolve his federal claim. As we noted earlier, Sherman did not argue that the Nevada Supreme Court overlooked this federal claim until his briefing in the Ninth Circuit—despite contending in the district court that the Nevada court overlooked other claims. As the Supreme Court has observed, a petitioner "presumably knows her case better than anyone else, and the fact that she does not appear to have thought that there was an oversight" until the federal appellate process "makes such a mistake most improbable." *See Johnson*, 568 U.S. at 306.

Both *Patsalis* and *Johnson* thus show that we must treat Sherman's right-to-a-complete-defense claim as adjudicated on the merits. As in *Patsalis* and *Johnson*, Sherman "presented his state and federal constitutional . . . challenges together and discussed them interchangeably." *Patsalis*, 47 F.4th at 1100. As in *Patsalis* and *Johnson*, the Nevada Supreme Court here "recognized that [Sherman] was presenting both a state and federal constitutional challenge." *Id.*; *see Johnson*, 568 U.S. at 294. And in both *Patsalis* and *Johnson*, the federal courts concluded that the claim was adjudicated on the merits by the state court. *Johnson*, 568 U.S. at 306; *Patsalis*, 47 F.4th at 1100. Given the similarities here, we likewise hold that the Nevada Supreme Court adjudicated Sherman's constitutional claim for violating his right to present a complete defense on the merits.

In sum, "[t]here is no reason to think that the [Nevada] court overlooked or failed to resolve [Sherman's] claim" regarding his right to present a complete defense. *See Patsalis*, 47 F.4th at 1100. We thus review the claim under AEDPA deference.

## B.

Turning to the merits, Sherman has not shown that the Nevada Supreme Court's denial of Sherman's right-to-present-a-complete-defense claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(1)–(2), and so the district court was right to deny the claim.

Sherman argues that the trial court violated his constitutional right to present a complete defense when it

precluded him from presenting evidence to rebut the State's theory that Sherman killed Dr. Bauer to hurt Dianne. He contends that the excluded evidence would have shown that he was not angry with Dianne over their failed relationship. Sherman also asserts that the excluded evidence shows that Dianne manipulated him into confronting Dr. Bauer by claiming that he molested her and her daughter. From this, Sherman argues that the jury could have found that he did not have the requisite intent for first-degree murder—that he did not intend to kill Dr. Bauer when he traveled to Dr. Bauer's Las Vegas home and instead Sherman lost control when confronting Dr. Bauer.

The constitutional right to "a meaningful opportunity to present a complete defense" is rooted in both the Due Process Clause and the Sixth Amendment. *Crane*, 476 U.S. at 690 (quoting *Trombetta*, 467 U.S. at 485); *see Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The [Sixth Amendment] right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.").

This right, however, is not absolute. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* (quoting *Rock v.*

*Arkansas*, 483 U.S. 44, 56 (1987)). Generally, the exclusion of evidence is unconstitutional when it "significantly undermine[s] fundamental elements of the defendant's defense." *Id.* at 315. But "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). "Only rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per curiam).

The Nevada Supreme Court affirmed the trial court's exclusion of the evidence on three grounds: (1) under Nev. Rev. Stat. § 50.085(3), (2) under Nev. Rev. Stat. § 48.035(1), and (3) under a harmless-error analysis. Reviewing each ground, we conclude that Sherman failed to satisfy AEDPA's strict requirements.

**i.**

Nev. Rev. Stat. § 50.085(3) generally prohibits the use of extrinsic evidence to prove specific instances of conduct to undermine a witness's credibility. The Supreme Court has expressly recognized its constitutionality and the legitimate interests it serves. *Jackson*, 569 U.S. at 509. "The purpose of that rule," the Court explained, "'is to focus the fact-finder on the most important facts and conserve judicial resources by avoiding mini-trials on collateral issues.'" *Id.* (quoting *Abbott v. State*, 122 Nev. 715, 736 (2006)). In addition, "[t]he admission of extrinsic evidence of specific instances of a witness' conduct to impeach the witness' credibility may confuse the jury, unfairly embarrass the victim, surprise the prosecution, and unduly prolong the trial." *Id.* at 511.

As the Court observed, Nevada's rule is like the "widely accepted rule of evidence law that generally precludes the admission of evidence of specific instances of a witness' conduct to prove the witness' character for untruthfulness." *Id.* at 510 (citing Fed. R. Evid. 608(b)).

Given all this, "[t]he constitutional propriety of [§ 50.085(3)] cannot be seriously disputed." *Id.* Indeed, the Supreme Court expressly held that none of its decisions "clearly establishes" that excluding evidence consistent with § 50.085(3)'s purposes "violates the Constitution." *Id.* at 511. Sherman has not pointed to any Supreme Court decision holding otherwise.

And nothing in the record shows that the trial court's evidentiary ruling deviated from § 50.085(3)'s legitimate purposes. As the Nevada Supreme Court found, it was not manifestly wrong to exclude collateral allegations of misconduct of a witness who was not on trial. While the excluded evidence may have somewhat undermined the State's theory that Sherman killed Dr. Bauer to get back at Dianne, it does not negate Sherman's culpability for first-degree murder and may have confused the jury with a mini-trial on the collateral issue of Dianne's alleged misconduct.

Thus, the Nevada Supreme Court's ruling on the exclusion of the extrinsic evidence here was not contrary to, or an unreasonable application of, clearly established federal law.

## ii.

Nev. Rev. Stat. § 48.035(1) permits the exclusion of evidence "if its probative value is substantially outweighed by the danger of . . . confusion of the issues or of misleading the jury." The Supreme Court has repeatedly affirmed state

rules giving trial courts discretion to exclude evidence that is more prejudicial than probative or confuses the issues. *See, e.g., Crane*, 476 U.S. at 689–90 ("[T]he Constitution leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'") (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

We have previously observed that the Supreme Court has not "squarely addressed" whether an "evidentiary rule requiring a trial court to balance factors and exercise its discretion" to exclude evidence, like § 48.035(1), itself violates a defendant's "right to present a complete defense." *Moses v. Payne*, 555 F.3d 742, 758 (9th Cir. 2009). And Sherman provides no Supreme Court case showing otherwise. Instead, Sherman relies on general propositions of law found in *Chambers*, 410 U.S. at 294; *Ake v. Oklahoma*, 470 U.S. 68, 83–84 (1985); *Crane*, 476 U.S. at 690–91; and *Skipper v. South Carolina*, 476 U.S. 1, 4–5 (1986).

But all these cases pre-date *Moses* and thus none clearly establish that an evidentiary rule requiring a trial court to balance factors and exercise its discretion, like § 48.035(1), deprived a defendant of his right to present a complete defense. *See Chambers*, 410 U.S. at 294 (concerning Mississippi's rules against hearsay and impeachment of a party's own witness); *Ake*, 470 U.S. at 76–77, 86–87 (finding a Due Process Clause right to access to a competent psychiatrist if the defendant cannot afford one and his mental state is likely to be a significant issue at trial); *Crane*, 476 U.S. at 690 (holding that the government may not "exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's

claim of innocence"); and *Skipper*, 476 U.S. at 3 (evaluating whether testimony from an incarcerated defendant's jailers and a visitor about his "adjustment" to jail met the threshold test for relevance under South Carolina law).

Again, nothing in the record shows that the trial court's ruling fell outside § 48.035(1)'s appropriate scope—as the Nevada Supreme Court concluded. The excluded evidence was, at best, of limited exculpatory value and risked confusing the jury because it related to misconduct of a person not charged in the crime. Because Sherman cites no Supreme Court cases that "squarely address the issue in the case or establish a legal principle that clearly extends to [this] context," *Moses*, 555 F.3d at 754 (simplified), the Nevada Supreme Court's § 48.035(1) ruling is not contrary to or an unreasonable application of clearly established federal law.

### iii.

The Nevada Supreme Court alternatively concluded that any error was harmless. *Sherman*, 114 Nev. at 1007–08. A federal constitutional error can be harmless only if a court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. While the Nevada Supreme Court did not cite *Chapman* in its opinion, it cited *Rembert*, which in turn cited *Chapman*'s harmless-error standard. *See Sherman*, 114 Nev. at 1006; *Rembert*, 104 Nev. at 683. We thus presume that the Nevada court applied the *Chapman* standard and review its application of that standard under AEDPA deference. *See Brown v. Davenport*, 596 U.S. 118, 127, 135 (2022) (explaining that a "harmless-error determination qualifies as an adjudication on the merits under AEDPA" and requires a petitioner to prove that the state court's decision was "unreasonable").

Sherman has not shown that the Nevada Supreme Court's application of the harmless error standard was "unreasonable."

Overwhelming evidence supports Sherman's conviction for murder in the first degree. *See* Nev. Rev. Stat. §§ 200.010, 200.030. None of the excluded evidence contradicts or minimizes the evidence that Sherman broke into Dr. Bauer's house in the middle of the night, struck him several times with a hammer, moved the telephone receiver away from Dr. Bauer, and stole items from Dr. Bauer's house. And a review of the transcripts from the guilt and penalty phases shows that Sherman presented evidence that Dianne told people, including Sherman, that she hated her father, that Dr. Bauer sexually abused her, and that she wanted to see him dead.

In addition, as the Nevada Supreme Court found, Sherman got much of his story out in closing. *Sherman*, 114 Nev. at 1007. While Sherman suggests that this factual finding was unreasonable, at closing, Sherman clearly offered his defense theory that Dianne manipulated and controlled him knowing that he was emotionally unbalanced. According to Sherman's counsel, Dianne purposefully exploited Sherman's sensitivities about child abuse and molestation by telling him that Dr. Bauer had molested her and her daughter. Sherman's counsel also argued that Dianne was desperate for Dr. Bauer's money. Sherman's counsel then contended that Dianne's manipulations drove Sherman to "confront Dr. Bauer over molesting Dianne's child and he lost it." All of this would contradict the State's putative motive of revenge and support a lower culpability than first-degree murder. Even so, the jury found Sherman guilty of first-degree murder.

And Sherman presented several witnesses who testified about Dianne's relationship with Sherman and her father during the penalty phase. Sherman's counsel argued in the penalty phase that Sherman was susceptible to Dianne's manipulation and that Sherman believed that Dr. Bauer had sexually abused her. He also blamed Sherman's increasing drug use and fragile emotional state. Sherman's counsel explained that Sherman killed Dr. Bauer in a rage due to his instabilities and Dianne's manipulation. As a result, the jury found, as mitigating factors, that the murder was committed when Sherman was under duress or domination of another person and under an extreme mental or emotional disturbance.

To the Nevada state court, all this demonstrated that the jury considered the excluded evidence about Dianne but that it was not compelling enough to reduce his sentence from death. *Id.* at 1007–08. The state court thus concluded that "even had the evidence at issue been presented at trial, the jury would not have found that Sherman was either innocent or guilty of a lesser included offense." *Id*. at 1008.

Finally, Sherman contends that the trial court's ruling also precluded a former psychologist, Dr. Stephen Pittel, from testifying on his behalf during the guilt phase. But the trial court's ruling did not bar Dr. Pittel's testimony and it is unclear why the expert witness declined to take the stand during the guilt phase. *See* Fed. R. Evid. 703 (the facts or data that an expert relies on to form the basis of an opinion "need not be admissible for the opinion to be admitted"). Sherman contends that the excluded testimony provided factual corroboration and foundation for Dr. Pittel's opinions, but he does not provide an argument or evidence on why Pittel did not testify at the penalty phase.

Thus, Sherman has not shown that the Nevada Supreme Court's harmless error determination was unreasonable.

## III.

Because the Nevada Supreme Court's denial of Sherman's right-to-present-a-complete-defense claim was not erroneous under AEDPA's deferential standard of review, we affirm.